Judgment rendered November 10, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,536-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BRIDGET EBARB                               Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 351763

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Meghan Harwell Bitoun

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JOSHUA K. WILLIAM
ALEX L. PORUBSKY
Assistant District Attorneys

* * * * *

Before GARRETT, McCALLUM, and BLEICH (*Pro Tempore*), JJ.

**BLEICH, J**. (*Pro Tempore*)

The defendant, Bridget Ebarb, was charged by bill of information with simple arson, a violation of La. R.S. 14:52. After a jury trial, the defendant was found guilty as charged pursuant to a unanimous verdict. Defendant was sentenced to three years at hard labor, suspended, with three years of supervised probation and a $1,000 fine. For the following reasons, we affirm.

## FACTS

The record shows that at 1:10 a.m. on August 27, 2017, the Shreveport Fire Department received a 911 call about a fire at 6801 West 70th Street in Shreveport. Captain Steven Wilkerson and Captain Michael Hood testified at trial that they responded to the scene, observing flames and thick black smoke coming from a window of the mobile home. Capt. Hood was the fire investigator and was accepted at trial as an expert in the origin and cause of fires. At the scene, Capt. Hood conducted audio recorded interviews of the eyewitnesses and took photographs. The following is a summary of the pertinent facts that Jesse Daugherty told Capt. Hood in his recorded interview.

The mobile home belonged to Daugherty's grandmother. Daugherty had been living there with defendant, his girlfriend of two months, along with some of their children from previous relationships. The couple had broken up and defendant returned to the residence that evening to retrieve some of her clothes. Defendant was accompanied by two men, Steven Paintin and Eric Duvall, and she was heavily intoxicated. Daugherty, Paintin, and Duvall remained on the porch outside talking while defendant made trips inside to gather her belongings.

After an argument, Daugherty told defendant to leave and return the next day when she was sober. Defendant announced that she was going back inside to get her cigarettes and her cell phone. Defendant returned a couple of minutes later, and as she, Paintin, and Duvall entered their vehicle to leave, a loud alarm sounded. Daugherty ran inside the house and found that his clothes hanging inside the master bedroom closet were on fire. Daugherty ran outside and yelled for Paintin and Duvall not to let defendant leave because she had set his house on fire.

Daugherty called 911, then he, Paintin, Duvall, and defendant attempted to extinguish the fire with water and a fire extinguisher. The fire spread quickly and the smoke was heavy. Defendant insisted on returning to the master bedroom to retrieve her phone but passed out from the smoke.

Daugherty's statements as to these facts were consistent with the statements made to Capt. Hood by Paintin and Duvall. Paintin was a friend of defendant's and had met Daugherty before. Duvall only met defendant and Daugherty that night. Daugherty also told Capt. Hood that before defendant entered the residence for the last time, she placed a white Bic cigarette lighter in her back pocket and said that she needed to get her cigarettes and cell phone from inside the residence.

Capt. Hood testified that from these interviews, he determined that defendant was the only person in the house while she retrieved her belongings and that she was the last person in the house before the fire alarm sounded. From the burn pattern, Capt. Hood determined that the fire originated where Daugherty's clothes were hanging in the master bedroom closet and that the fire was caused by a direct flame contact. Capt. Hood testified that he searched the area where the fire originated for an ignition

source, which would have created an arc of electricity, a spark, or an open flame, that could have started the fire that burned Daugherty's clothes. Capt. Hood testified that he found no accidental ignition sources within the area and determined that the fire was ignited by a human act. Capt. Hood classified the fire as an incendiary act and explained at trial that this meant the fire was intentionally started.

Capt. Hood estimated the approximate value of the property loss to be $10,000. The crime scene photos revealed that nearly everything in the master bedroom and the areas nearby were damaged by fire, heat, smoke, or water and were covered in soot and debris.

Capt. Hood testified that he found a package of Marlboro cigarettes, a cell phone, a set of keys, and a white Bic cigarette lighter on the master bedroom dresser, just three to four feet from the fire's origin. He stated that the deposits of soot and debris on these items established that they had been situated in that spot when the fire started. Capt. Hood testified that the only potential ignition source that he found within the area where the fire originated was the white Bic cigarette lighter.

Capt. Hood testified that he advised defendant of her *Miranda* rights before interviewing her at the scene because she was considered a suspect at that point. Defendant acknowledged that the cell phone found near the cigarette lighter on the master bedroom dresser was hers. When defendant admitted that she had been drinking, Capt. Hood decided to end the interview. Defendant was arrested at the scene and charged with simple arson.

The trial testimony of Jesse Daugherty, Steve Paintin, and Eric Duvall as to these facts was largely consistent with their prior statements to Capt.

3

Hood.  At trial, Daugherty testified that he had warned defendant that she had two weeks to gather her belongings and then he would change the locks. He stated that she did not gather her things in that time period and he had changed the locks of the residence on the day of the incident.  Daugherty testified that defendant was angry and drunk when she arrived, and she kept pushing him and hitting him.  Daugherty stated that he called 911 to report that she was hitting him.

Daugherty testified that most of the personal items belonging to him and his daughter were lost in the fire.  Daugherty stated the Red Cross provided him with a $300 voucher for clothing and that his daughter's school assisted with her uniforms.  He testified that the insurance payment to cover the loss of the mobile home went to his grandmother, as the owner, but he had signed the lease for the lot; therefore, he had to continue paying the lease fees even though the mobile home was destroyed.

Defendant testified at trial that two of her four children lived with her in Daugherty's trailer and that she and Daugherty did not break up until the day of the incident.  Defendant stated they had argued at the residence earlier that day and discussed her moving out, then hours later she received a text from him stating that he had changed the locks.

Defendant testified that many pieces of furniture in the house, specifically in the bedroom, belonged to her and that she lost most of the furniture and personal items belonging to her and her children in the fire. Defendant stated that she only grabbed some of her things and none of her children's things, because she had planned to return later for the rest.

Defendant acknowledged in her testimony that the cell phone and cigarettes found on the dresser near the fire's origin belonged to her.  When

4

asked whether the white Bic lighter found nearby also belonged to her, she simply replied, "I don't know." Defendant testified that she did not recall if she had her cigarette lighter with her on the porch, as Daugherty had stated. Defendant asserted she did not know when the lighter was placed on the dresser and did not know if that lighter was hers.

Defendant testified that she had gone back inside to get her cell phone and cigarettes, but she did not retrieve them. When asked why she left the residence without those items, she replied, "I don't know." Defendant asserted that she did not start the fire.

Following the close of evidence, the jury found defendant guilty of simple arson with damage of $500 or more. Defendant's motion for post-verdict judgment of acquittal was denied. At the time of sentencing, the trial court stated it had reviewed the guidelines of La. C. Cr. P. art. 894.1 and several letters received on behalf of the defendant. Based on the totality of the circumstances, the defendant's lack of a significant criminal history and her current parental duties, the trial court sentenced defendant to serve three years at hard labor, suspended, with three years of supervised probation. Additionally, the trial court imposed a fine of $1,000 and ordered defendant to participate in substance abuse treatment, a mental health evaluation and any mental health treatment recommended. Defendant was also ordered to register as an arsonist with the state fire marshal under La. R.S. 15:562.3. Defendant appeals her conviction.

## DISCUSSION

Defendant contends the circumstantial evidence presented at trial was insufficient to support the conviction. Defendant argues that the state did not establish beyond a reasonable doubt that she committed simple arson and

5

did not exclude her reasonable hypothesis of innocence that Jesse Daugherty started the fire.

In considering the issue of sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708.

The appellate court does not assess the credibility of witnesses or reweigh evidence, and accords great deference to the trier of fact's decisions to accept or reject witness testimony in whole or in part. *State v. Frost, supra*. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Wooten*, 51,738 (La. App. 2 Cir. 2/13/18), 244 So. 3d 1216. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *Id*. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of

innocence. La. R.S. 15:438; *State v. Copeland*, 52,742 (La. App. 2 Cir. 9/25/19), 280 So. 3d 848.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. *State v. Frost, supra.* The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Jackson, supra.*

Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another without the consent of the owner. La. R.S. 14:52(A)(1). Whoever commits the crime of simple arson where the damage done amounts to $500 or more shall be imprisoned at hard labor for not more than 15 years and fined not more than $15,000. La. R.S. 14:52(B).

In the present case, the conviction of simple arson turns largely, although not solely, on circumstantial evidence, as there were no eyewitnesses who actually observed defendant start the fire. The evidence presented at trial established that defendant was the last person in the house prior to the fire alarm sounding and the discovery of the fire. From the evidence recovered at the scene, the fire investigator was able to exclude the possibility that the fire was caused by accident and to determine that the fire originated with Daugherty's clothes being intentionally ignited by an open contact flame. The investigator further determined that the white Bic cigarette lighter, found a short distance away along with defendant's cell phone and cigarettes, was the only reasonable ignition source.

Defendant testified under oath that the cell phone and cigarettes were hers, even as she claimed she did not know whether the lighter found at the scene belonged to her. Defendant acknowledged that she had gone back into the house to get her cell phone and cigarettes, but could not explain why she left the house without them or why they were found on her dresser near the cigarette lighter just a few feet from where the fire originated. Eyewitnesses testified, and defendant did not dispute, that she was upset with Daugherty and that she had been drinking. Daugherty stated that defendant was the last person in the house before he heard the sound of the fire alarm.

The jury heard the testimony and weighed the credibility of the witnesses. The verdict indicates that the jury found the testimony of the fire investigator and Daugherty to be more credible than that of defendant.

Based upon the evidence contained in the record, the jury could have reasonably inferred that defendant used the white Bic cigarette lighter to intentionally set fire to Daugherty's clothes in retaliation for him telling her to leave the residence after their relationship ended. Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have rejected defendant's claims of innocence and found that the essential elements of the crime were proven beyond a reasonable doubt. Accordingly, the assignment of error lacks merit.

We have examined the record for error patent and found none.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**

8